Jack R. Greenland v. Commissioner.
Greenland v. Commissioner
Docket No. 6412-65.
United States Tax Court
T.C. Memo 1968-72; 1968 Tax Ct. Memo LEXIS 227; 27 T.C.M. (CCH) 371; T.C.M. (RIA) 68072; April 23, 1968. Filed *227 Jack R. Greenland, pro se, 2084 Coventry Rd., Columbus, Ohio. Rodney G. Haworth, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency in petitioner's income tax for the year 1962 in the amount of $478. The only issue presented for decision is whether petitioner furnished over half of the support for each of his three minor children in the custody of his former wife. Findings of Fact Some of the facts have been stipulated and are found accordingly. Jack R. Greenland was a resident of Columbus, Ohio, at the time of filing his petition herein. He filed his 1962 income tax return with the District Director of Internal Revenue, Cincinnati, Ohio. Petitioner was formerly married to Marion L. Greenland, who is now Mrs. Birchard Foster. Three children were born of the Greenland marriage - Joseph, on November 15, 1947, John, on March 30, 1952, and Jane, on May 5, 1957. Petitioner and Marion were divorced on March 1, 1958, custody of the three minor children being awarded to Marion. Under the settlement agreement, petitioner was to pay Marion $125 per month as alimony and $75 per child per month *228 for child support. Under a December 1961 decree, subsequent to the remarriage of Marion, petitioner's obligations were modified, and he was directed to pay to the clerk of the Division of Domestic Relations, Court of Common Pleas, Franklin County, Ohio, $150 per month for the support of the three minor children plus one percent for the clerk's costs. Petitioner made the payments directed by the decree. Additionally, during 1962 petitioner issued two checks to Joe Greenland totaling $83.33 and one check each to John and Jane Greenland, each in the amount of $33.33, and made gifts of $25 to each child. Also in 1962, petitioner's employer deducted payments totaling $135.65 for an insurance program covering petitioner's three children. During 1962, Marion and her husband, Birchard C. Foster, lived in a four-bedroom house in Buena Park, California, together with a daughter of their marriage and the three children of petitioner and Marion. Their income for 1962 was at least $7,600, exclusive of the payments made by petitioner. They filed Forms 2038 showing total support payments for the three children as follows: Joseph
John
Jane
Food
$1,095
$ 730
$ 730
Lodging
300
300
300
Utilities
90
60
30
Clothing
150
100
75
Education
70
25
25
Medical and dental
60
470
85
Other 156
104
104
Total
$1,921
$1,789
$1,349
*229 The Forms reflected $600 as having been contributed by petitioner for each child and $200 as having been furnished by 372 Joseph for his own support and the balance as having been furnished by the Fosters. These forms did not include the amounts paid by petitioner directly to the children, the insurance payments deducted by petitioner's employer, or the costs paid by petitioner to the clerk of the court. Except for food, the amounts reflected on the Forms 2038 were expended in furnishing the various categories of expenses specified therein. The following represent the amounts expended for food for the three children during 1962: Joseph
$700
John
550
Jane
425
In 1962, petitioner did not contribute over half of the support of either of his minor children John and Joseph but did contribute over half of the support for his minor child Jane. Opinion Even if we resolve all doubts in favor of petitioner, he has not satisfied his burden of proof with respect to Joseph and John. Petitioner's last check for the support of his children in 1962 was dated December 28, 1962, and petitioner testified that he mailed the check on that date. Even though this check apparently *230 was not received by the clerk of the court until January, we have assumed, for the purposes of decision in respect to Joseph and John, that the check was received in December and that it is otherwise to be credited to petitioner's 1962 payments. We have also assumed that the costs paid to the clerk of the court are to be allocated to petitioner's support contributions for Joseph and John, although we have serious doubts on this score. Adding to these amounts the checks issued directly to the children and the insurance payments for their benefit, and assuming that all of such items constitute support and that all unallocated items are equally allocable to each child, petitioner's payments in 1962 for the support of Joseph were $759.55, while the payments for the support of John were $709.55. At the trial, petitioner gave some vague testimony as to the standard of living of the children, but it was insufficient to permit us to determine the amount of total support. The only indications in this regard were Forms 2038 filed by Marion and her present husband which the Court directed respondent to submit in response to petitioner's subpoena. Obviously, these forms are not evidence that *231 the amounts shown therein were in fact expended for the support of the children. In an effort to afford petitioner every opportunity to provide the necessary evidence as to the amount of total support, we held the record herein open so that the depositions of the Fosters could be obtained. After much delay, the depositions were finally filed with the Court on April 9, 1968. Without detailing all of the facts which might be gleaned from the depositions, we think that, except with respect to the item for food, the Forms 2038 fairly reflect the amounts actually expended for the support of the three children. As best we can determine, the total amount expended for food for the entire family of six was approximately $3,000. Even if we assume that the children ate more than the adults, we doubt that more than $2,100 can properly be allocated to the children. If we recognize that Joseph and John, as two growing boys, probably ate more than their younger sisters and that John, as a 15-year-old, probably ate more than his 10-year-old brother, it is not unreasonable to conclude that $700 was expended for food for Joseph, $550 for John, and $425 for each of the daughters. This would result *232 in a reduction of $395 in the amount claimed to have been expended by the Fosters for the support of Joseph and $180 for the support of John. On the foregoing basis, we reconstruct the figures as shown on the Forms 2038 for Joseph and John to reflect the reductions in food expenditures and the additions to the amount of $600 shown as petitioner's share for the items beyond the $50 per month for which we have given petitioner credit or assumed that he is entitled to credit. This produces an amount of $1,526 for the total support of Joseph, of which petitioner furnished $759.55. With respect to John, the total support figure is $1,609, of which petitioner furnished $709.55. Thus, even on the most favorable assumptions petitioner is not entitled to claim a dependency exemption for Joseph or John for 1962. [1]
With respect to Jane, the situation is different. Here we proceed on the assumption that the December 28, 1962 check could not have reached California *233 and actually been 373 used for the support of Jane until 1963. We also assume that neither the insurance payments nor the costs paid to the clerk of the court constitutes support. On this basis, the amount of support of Jane furnished by petitioner is $550 (11 monthly payments) plus additional checks of $58.33, or a total of $608.33. Similarly, we must reduce the amount of $1,349 claimed as total support of Jane on the Form 2038 by $305, reflecting the reduced amount allocable to food - i.e., the difference between $730 shown for food on the form and the $425 which we have found to be more in line with the actualities. This produces a total support figure with respect to Jane of $1,044, of which petitioner furnished $608.33. Thus, petitioner is entitled to claim a dependency exemption for Jane for 1962. [2]
Finally, we need to deal with petitioner's claim that he and Marion orally agreed that the $150 monthly amount which he was required to pay was intended to constitute more than one-half of the total support to permit him to take the three children as exemptions on his return. Even if such an agreement existed, it would be of no avail to petitioner. [3] The right to a dependency *234 exemption is based on amounts actually expended and not the intention of the parties. Robert I. Brown, 48 T.C. 42 (1967). As a result of petitioner's entitlement to a dependency exemption for Jane, the deficiency asserted against him should be reduced from $478 to $312, together with interest as provided by law. Decision will be entered in accordance with the foregoing. *235 Footnotes
1. Nor would our conclusion be different if we added the items totaling $159.55 as to Joseph and $109.55 as to John for which we have given petitioner credit to the respective amounts of $1,526 and $1,609 for total support.↩
2. Even if we eliminated the $58.33 which petitioner sent separately to Jane on the ground that there is no evidence that this amount was actually spent for Jane's support, petitioner would still have provided $550 or more than one-half of Jane's total support. Nor would this conclusion be altered if we added the $58.33 to the $1,044 we have found as the total support for Jane. ↩
3. Pub. L. 90-178, 90th Cong., 1st Sess. (1967), provides for the allocation of dependency exemptions by agreement between divorced or separated parents or by the decree itself, with respect to taxable years beginning after December 31, 1966. The problems of proof of support reflected in the instant case dramatize the advisability of petitioner and his former wife making every effort to comply with these new provisions.↩